UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| J. PATRICK DEDYN, JEFFREY ERNY, and JEFFREY KASPRZYK, ET AL., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GINTZLER GRAPHICS, INC. and RESOURCE LABEL GROUP LLC,<br><br>Defendants. | Case No. 1:23-cv-1291-GWC |

**ORDER ON MOTIONS**
**(Docs. 8, 25, 50)**

Plaintiffs J. Patrick DeDyn, Jeffrey Erny, and Jeffrey Kasprzyk bring this action on behalf of themselves and all others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), and New York Labor Law § 191(1)(a). (Doc. 1.) Defendant Gintzler was, at all relevant times, Plaintiffs' employer. (*Id.* ¶ 10.) Defendant Resource Label Group ("RLG") is Gintzler's parent company. (*Id.* ¶ 11.) According to the Complaint, Gintzler violated time-of-payment requirements under the FLSA and NYLL by paying Plaintiffs on a semimonthly rather than weekly basis. Gintzler and RLG also allegedly violated ERISA by failing to timely remit employees' contributions to the employees' 401(k) plan and improperly retaining those funds to use running the business. Plaintiffs have moved for conditional certification of a FLSA collective action. (Doc. 8.) Defendants have moved to dismiss the Complaint in its entirety. (Doc. 25.)

The parties completed their briefing on these motions and, on January 14, 2025, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that

Defendants' Motion to Dismiss be granted in full and that Plaintiffs' Motion for Conditional Certification be denied. (Doc. 50.) The Magistrate Judge also recommended denying the ERISA claim without prejudice and with leave to amend. Plaintiffs timely filed an objection to the R&R's conclusions with respect to the FLSA and NYLL claims. The parties have now completed their briefing on the objections and have submitted letters regarding recent changes in New York labor law.

## **Factual Background**

The court draws the following facts from the Complaint (Doc. 1). As required on a motion to dismiss, the court accepts these facts as true for the purposes of this opinion. *Trs. of Upstate N.Y. Eng'rs. Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Plaintiffs are all current or former employees of Gintzler. (Doc. 1 ¶¶ 4–8.) Plaintiff DeDyn is employed as a Prepress Technician, Plaintiff Erny is a Prepress Supervisor, and Plaintiff Kasprzyk was employed as a Digital Press Operator. (*Id.* ¶¶ 4, 6, 8.) In these roles, Plaintiffs spent—and continue to spend, in the cases of Plaintiffs DeDyn and Erny—more than 25% of their time doing physical tasks, such as making and moving printing plates, transferring work folders from department to department, washing printing plates, repairing machines, and moving press rolls. (*Id.* ¶¶ 5, 7, 9.)

From October 2017 to July 1, 2022, Gintzler paid its employees every two weeks in accordance with a company-wide payroll policy. (*Id.* ¶ 22.) Before October 2017, Gintzler paid its employees weekly. Gintzler returned to weekly payments in July 2022. Plaintiffs allege that, by paying them semimonthly rather than weekly, Gintzler deprived them of money that belonged to them, and Plaintiffs could not spend that money on everyday expenses like "purchasing food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and

2

services, insurance, automobile payments, fuel for vehicles, education tuition and expenses, daycare or childcare, public transportation, and other basic living expenses." (*Id.* ¶ 26.) Plaintiffs also had to delay making certain purchases because of their pay schedule. (*Id.* ¶ 27.)

Defendants also "regularly failed to ensure that amounts withheld from paychecks of the Gintzler employees were remitted to the [employee 401(k) plan] as soon as they could reasonably be segregated from the assets of the employer." (*Id.* ¶ 30.) Remittances were made between one week and one month late. (*Id.*) Defendants used unremitted employee contributions for daily business operations. (*Id.* ¶ 33.)

## Standard of Review

Where a magistrate judge enters a recommended disposition on a dispositive motion, a district judge must determine "de novo" any part of the recommendation to which a party properly objects. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). "The court may adopt those portions of the [R&R] to which no objection is made as long as no clear error is apparent from the face of the record." *United States v. Shores*, No. 17-cr-00083, 2024 WL 489313, at *10 (D. Vt. Feb. 8, 2024) (alteration in original; quoting *Green v. Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020)). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Cullen*, 194 F.3d at 405.

## Rule 12(b)(1) Standard

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l*

3

*Australia Bank*, 547 F.3d 167, 170 (2d Cir. 2008.) "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside of the pleadings." *Morrison*, 547 F.3d at 170.

### Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 78 (2d Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In evaluating a Rule 12(b)(6) motion, the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Trs. of Upstate N.Y. Eng'rs.*, 848 F.3d at 566) (internal quotation marks omitted). "Dismissal is appropriate when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law.'" *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019) (alteration in original) (quoting *Parkcentral Glob. Hub Ltd. v. Porsche Auto Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014)).

### Analysis

**I.    Motion to Dismiss (Doc. 25)**

Defendants seek dismissal of the entire Complaint. The court begins by assessing Plaintiffs' federal law claims before turning to the alleged violation of NYLL § 191(1)(a). Because Plaintiffs have objected to the R&R's conclusions regarding the FLSA and NYLL claims, the court reviews those portions of the R&R *de novo*.

### A.  Late Pay Under the FLSA (Count I)

Count I of the Complaint alleges a violation of the FLSA's prompt payment requirement based on Gintzler's failure to pay Plaintiffs on a weekly basis in accordance with NYLL § 191(1)(a). "Although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998). Under that requirement, employers must pay wages "in a timely fashion." *Id.* at 57.

In general, an employer violates the FLSA's prompt payment requirement by paying employees after their agreed-upon payday. In this case, Plaintiffs acknowledge that Gintzler paid them according to the schedule in their contracts. Instead, they rely on the Second Circuit's holding in *Rogers* that "what constitutes timely payment [under the FLSA] must be determined by objective standards—and not solely by reference to the parties' contractual arrangements." *Id.* Here, Plaintiffs argue that NYLL § 191(1)(a) provides such an objective standard by mandating that employers pay "manual workers" like Plaintiffs on a weekly basis. They further contend that their true "payday" was the weekly one provided for in § 191(1)(a), not the one provided for in their contracts. (*See* Doc. 1 ¶ 35.) Thus, in Plaintiffs' view, Gintzler violated the prompt payment requirement for half of all the weeks they worked.

Gintzler responds that the FLSA does not prescribe any particular payment schedule and that a biweekly payday complies with the FLSA "so long as the employer pays it workers on a timely basis consistent with its own regularly established pay schedule." (Doc. 25-1 at 14 (emphasis excluded).) Because Plaintiffs admit that Gintzler paid them on a regular, biweekly basis consistent with their contracts, Gintzler believes dismissal is warranted.

5

In *Rogers*, the Second Circuit case that both parties cite, the plaintiffs were challenging a change in their pay schedule from weekly to biweekly as a violation of the FLSA's prompt payment requirement. The court began by discussing the caselaw, including cases in which an agreed-upon arrangement was deemed to violate the FLSA's requirement that employers pay on time. 148 F.3d at 56–57. In each of those cases, however, the delay in payment had been substantial, often months. Nevertheless, the Second Circuit drew from those cases the principle on which Plaintiffs now rely: objective standards, not just adherence to the terms of the agreed-upon payment schedule, determine whether a payment is timely under FLSA. Thus, a breach of the FLSA does not turn on whether the employer breached the contract. At the same time, "neither does a violation occur simply because a practice breaches a worker's collective bargaining agreement." *Id.* at 57.

As noted above, *Rogers* involved a change in a pay schedule from weekly to biweekly. In that context, the Second Circuit announced the following test for determining whether an employer had violated the prompt payment requirement:

> In general, the prompt payment requirement is not violated when an employer changes the pay schedule, provided that the change: (a) is made for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c) is intended to be permanent; and (d) does not have the effect of evading the FLSA's substantive minimum wage or overtime requirements.

*Id.* at 58.

A handful of courts in this circuit have now considered whether a violation of NYLL § 191(1)(a) amounts to a violation of the FLSA, with varied results and varied reliance on *Rogers*. The decisions fall into three camps: (1) a violation of § 191(1)(a) is *per se* a violation of the FLSA; (2) a violation of § 191(1)(a) is one objective fact to consider under the *Rogers* test in

6

determining whether an employer violated the FLSA; and (3) a violation of § 191(1)(a) has no bearing on whether an employer violated the prompt payment requirement of the FLSA.

In the *per se* camp is *Cooke v. Frank Brunckhorst Co.*, 734 F. Supp. 3d 206 (E.D.N.Y. 2024). There, the court emphasized the interplay between the FLSA and state law. As the opinion explains, "the FLSA sets a national 'floor' in terms of working conditions" but does not preempt more protective state laws. *Id.* at 214 (quoting *Rogers*, 148 F.3d at 57). Congress thus "empowered states to augment protections conferred by the FLSA by statute." *Id.* For example, "the minimum wage applicable to an employee in New York is governed by an interplay of the FLSA and the NYLL," with state law controlling when it is more protective than federal law. *Id.* The court then concluded that, given this interplay, a violation of NYLL § 191(1)(a) could amount to a violation of the FLSA's prompt payment requirement.[1]

This analysis does not stand up to scrutiny, as discussed by the courts that fall into the third camp—those that have held that § 191(1)(a) has no bearing on whether a FLSA violation has occurred. Section 218(a) of Title 29 of the U.S. Code, referred to as the FLSA's "Savings Clause," "has been interpreted to provide that states may impose additional requirements on employers, and that whatever standard is more worker-protective will generally control." *Provencher v. Bimbo Bakeries USA, Inc.*, 705 F. Supp. 3d 238, 253 (D. Vt. 2023). But that does not mean that a violation of New York's minimum wage law constitutes a violation of the FLSA. *See McDonald v. H&M Fashion USA Inc.*, No. 24-CV-2476, 2025 WL 744014, at *3 (S.D.N.Y. Mar. 6, 2025) (explaining that, although the Savings Clause "permits more protective state

---

[1] In the R&R, the Magistrate Judge cited *Cooke v. Frank Brunckhorst Co.*, 722 F. Supp. 3d 127 (E.D.N.Y. 2024) and stated that the case did not support Plaintiffs' position because the court in that case "did not reach the issue presented here." (Doc. 50 at 21.) Although the decision cited in the R&R did not reach the issue, the court *did* reach the issue in its order on the defendant's motion for reconsideration, which is the opinion cited above by this court.

7

laws, . . . it does not follow that simply because a State may provide greater protections to workers than the FLSA does, a violation of those state laws inherently give rise to an FLSA claim); *see also Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 333 (S.D.N.Y. 2009) (dismissing claim for violation of FLSA's prompt payment requirement based on violation of NYLL § 191(1)(a) and stating that the FLSA does not require employers to structure their pay schedules to comply with state-mandated pay periods).

Instead, the Savings Clause means that, when an employer violates both the FLSA's minimum wage law and New York's minimum wage law, the more protective state law applies. Similarly, if an employer's conduct violates only New York's minimum wage law, the FLSA will not preempt the employee's state-law claim. Extending this reasoning to the case at hand, the FLSA would not preempt a worker's claim under NYLL § 191(1)(a), and the more protective law should control. But the Savings Clause does not incorporate state minimum wage laws or NYLL § 191(1)(a) into the FLSA's regime. The court therefore agrees with the R&R's statement that an employer's decision to make "biweekly wage payments is not a *per se* unreasonable delay." (Doc. 50 at 19.)

The court in *Strain v. Southwest Airlines Co.*, No. 24-CV-8885, 2025 WL 1384156 (E.D.N.Y. May 13, 2025) took a middle path. The court reasoned that *Rogers* mandates "that a violation [of the prompt payment requirement be] measured against 'objective' standards" and that NYLL § 191(1)(a) could serve as one such measure. *Id.* at *3 (citing *Rogers*, 148 F.3d at 57–58). At the same time, looking *only* to whether a violation of NYLL § 191(1)(a) had occurred would be "legally inconsistent with *Rogers* . . . by resulting in the Court ignoring all other standards other than the one in NYLL." *Id.* This middle path "means that [a defendant] can invoke business reasons and other facts in response to justify why its wage payments were

8

nonetheless prompt under FLSA," even when the employer paid its employees biweekly in violation of NYLL § 191(1)(a). *Id.* at *3. Ultimately, the court in *Strain* denied the defendant's motion to dismiss, concluding that the plaintiffs' allegations regarding NYLL § 191(1)(a), their status as manual workers under New York law, and their reliance on their wages for subsistence were sufficient to state a claim under the FLSA.

The court agrees that an employer's violation of NYLL § 191(1)(a) is one objective standard by which to measure whether an employer has timely paid its workers. In passing NYLL § 191(1)(a), the state legislature took the position that, for so-called manual workers, a biweekly pay schedule is unreasonable and should be considered late payment. In doing so, the state government recognized that some workers have little savings and rely on more frequent paydays.

The court therefore respectfully disagrees with the R&R's suggestion that it is "[s]ignificant[]" that, "when paid biweekly, Plaintiffs received double the pay they would have received when paid weekly." (Doc. 50 at 19.) To those who have ample savings, it may seem like a biweekly pay schedule would make no difference to workers; they get twice as much money per paycheck than if they were paid weekly, so that money should last them twice as long and work functionally like a weekly paycheck. In reality, for workers with little cushion in their bank accounts, large expenses like rent payments or car repairs may drain their financial resources to zero. Suddenly, waiting two weeks for the next paycheck instead of one week becomes a very big deal.

At the same time, the court is mindful that the FLSA sets a national *floor* for wages, hours, and related working conditions. As the U.S. Bureau of Labor Statistics' data show,

9

biweekly pay schedules are extremely common, even in many industries whose workers would qualify as "manual workers" under NYLL § 191(1)(a):

**Chart 3. Frequency of pay period by industry in the CES survey, February 2023**

[Bar chart showing Weekly, Biweekly, Semimonthly, and Monthly pay period frequencies across industries: Mining and logging, Construction, Manufacturing, Trade, transportation, and utilities, Information, Financial activities, Professional and business services, Education and health services, Leisure and hospitality, Other services]

Hover over chart to view data.
Source: U.S. Bureau of Labor Statistics, Current Employment Statistics survey

U.S. Bureau of Labor Statistics, *Current Employment Statistics: Length of Pay Periods in the Current Employment Statistics Survey* (Aug. 4, 2023), https://www.bls.gov/ces/publications/length-pay period.htm#:~:text=In%20February%202023%2C%20biweekly%20was%20the%20most,establishments%20paying%20their%20employees%20every%202%20weeks [https://perma.cc/NSU9-R74K]. Other than generalized allegations that "the delayed wage payments prevented Plaintiffs and Class Members from spending money earned on a host of everyday expenses and to provide for their basic needs," the Complaint contains no specific facts to support the claim that the pay schedule was so unreasonable as to violate the FLSA. New

10

York, perhaps wisely, has mandated more frequent pay for manual workers. Without more, however, the fact that an employer has chosen a biweekly pay schedule—and paid its workers on time according to that schedule—is not sufficient to establish untimely payment under the FLSA.

The court therefore agrees with the R&R's conclusion that, in this case, "Plaintiffs fail to allege facts establishing Defendants' changing of the pay schedule for manual workers from weekly to biweekly for the period October 2017 to July 1, 2022 did not comply with the[] four factors" identified in *Rogers*. (Doc. 50 at 19.) The court ADOPTS the R&R's recommendation to grant the Motion to Dismiss with respect to this claim.

## B.   Violation of ERISA Sections 404 and 406 (Count III)

Count III of the Complaint alleges that Gintzler and RLG violated §§ 404 and 406 of ERISA by failing to timely remit employees' 401(k) contributions and improperly using those unremitted contributions to operate the business. Defendants take issue with what they view as the cursory nature of Plaintiffs' pleadings on this cause of action. As a general matter, the R&R agreed with Defendants that Plaintiffs failed to allege sufficient factual matter to support their claims and, therefore, recommended dismissal of Count III. (Doc. 50 at 22–38.) Specifically, the R&R concluded that the claim was subject to dismissal under Fed. R. Civ. P. 12(b)(1) because Plaintiffs failed to allege an injury in fact. The R&R further concluded that dismissal was also warranted under Fed. R. Civ. P. 12(b)(6) because Plaintiffs failed to allege that Defendants were acting as fiduciaries. The R&R recommended, however, that Count III be dismissed without prejudice and that Plaintiffs be given an opportunity to file an amended complaint with respect to this claim.

Because the R&R would grant Plaintiffs the opportunity to amend, they do not object to the R&R's recommendation that the ERISA claims be dismissed without prejudice. The court

therefore reviews this portion of the R&R for clear error. *See Shores*, 2024 WL 489313, at *10. Finding none, the court AFFIRMS, APPROVES, and ADOPTS the portion of the R&R recommending dismissal of the ERISA claims without prejudice and with leave to replead. Count III is therefore DISMISSED WITHOUT PREJUDICE. Plaintiffs may file a motion to amend the complaint in accordance with Local Rule 15.

The court must also briefly address Defendants' argument that the court should sever the ERISA claim from the rest of the Complaint. The R&R concluded that the request to sever was moot because of its recommendation that the court dismiss the FLSA and New York Labor Law claims. As discussed below, the court will not adopt the recommendation to dismiss the NYLL claim, so that reasoning no longer applies. However, the court has now dismissed the ERISA claim, albeit without prejudice, so it is not appropriate to sever the claim at this time. Hence, Defendants sought severance *as an alternative* to dismissal. Defendants may renew their request to sever the claims in a future motion.

    **C.**    **Late Pay Under NYLL § 191(1)(a) (Count II)**

Plaintiffs' final claim alleges that Defendant Gintzler violated New York Labor Law § 191(1)(a), which requires employers to pay "manual workers" on a weekly basis. Gintzler does not dispute that Plaintiffs have adequately pled that they are manual workers within the meaning of the statute and that it paid Plaintiffs on a semimonthly basis between October 2017 and July 1, 2022. Instead, Gintzler argues that NYLL § 198 provides no private cause of action for violations of § 191(1)(a).

When the parties briefed the Motion to Dismiss, and when the Magistrate Judge issued the R&R, there was a split at the appellate level in the New York state courts as to whether NYLL § 191, in conjunction with NYLL § 198, provides a private right of action to employees

12

paid on a semimonthly rather than weekly basis in violation of § 191. *See Vega v. CM & Assoc. Constr. Mgt.*, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (N.Y. Ct. App. 2019) (holding that NYLL § 191 provides a private right of action); *Grant v. Glob Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 204 N.Y.S.3d 117 (N.Y. Ct. App. 2024) (disagreeing with *Vega* and holding that NYLL § 191 does not provide a private right of action). The parties' briefing focused on which approach the New York Court of Appeals was most likely to adopt and, therefore, which approach this court should take. *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) ("Where state law is unsettled, we are obligated to carefully predict how the state's highest court would resolve the uncertainty or ambiguity." (cleaned up)).

At the time of the briefing, § 198 provided, in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

NYLL § 198(1-a). "Courts have treated Section 198(1-a) as providing an express cause of action for 'wage claims' under Article 6." *Toxqui v. R&P Pizza Corp.*, No. 24-cv-3339, 2025 WL 2430569, at *13 (S.D.N.Y. Aug. 22, 2025) (slip copy).

The central dispute between the *Vega* and *Grant* courts—and among the federal district courts assessing those opinions—has been whether *late* payment under § 191(1)(a) is a form of *underpayment* as contemplated by § 198 and, therefore, whether a claim under § 191(1)(a) is a "wage claim" for which employees have a private cause of action. The *Vega* court reasoned that, the moment that an employer has failed to pay its employees wages that they are due, those

13

employees have been underpaid, even if the employer subsequently pays those wages. 107 N.Y.S.3d at 288. In *Grant*, the court rejected *Vega*'s reasoning that, for manual workers, payment is "due" after the first week of a biweekly pay period. 223 A.D.3d at 716. Instead, the court reasoned that, "where an employer uses a regular biweekly pay schedule, that employer's payment of wages is due, under the employment agreement between the employer and an employee, every two weeks." *Id.* In the *Grant* court's view, "[s]uch an agreed-upon pay schedule between an employer and a manual worker violates the frequency of payments requirement . . . , but is not equivalent, in our view, with a nonpayment or underpayment of wages." *Id.* The R&R sided with the *Grant* court, determining that § 198 does not provide a private right of action for violations of § 191(1)(a) and, therefore, recommending the dismissal of Plaintiffs' NYLL claim. Plaintiffs object to that portion of the R&R.

After the parties completed their briefing and after the Magistrate Judge issued the R&R, the New York State Assembly amended NYLL § 198. 2025 Sess. Law News of N.Y. Ch. 56 (S. 3006-C). It now specifically addresses § 191(1)(a) and the appropriate remedies for a violation of that statute. Picking up where the last quote of § 191(1)(a) left off, the statute now reads:

> Notwithstanding the provisions of this subdivision, liquidated damages shall not be applicable to violations of paragraph a of subdivision one of section one hundred ninety-one of this article where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly.

NYLL § 198(1-a). The statute then goes on to lay out the appropriate remedies in such cases. For conduct occurring before the amendments, as in this case, the statute provides for damages as follows:

> (i) no more than one hundred percent of the lost interest found to be due for the delayed payment of wages calculated using a daily interest rate for each day payment is late based on the annual rate of interest then in effect, as

> prescribed by the superintendent of financial services pursuant to section fourteen-a of the banking law for the employer's first violation . . . .

*Id.* § 198(1-a)(i). The amendment explicitly applies to cases pending at the time of its enactment. *See* N.Y. Legis. 56, S. 3006-C, Part U, § 2 (stating that the amendments "shall take effect immediately and shall apply to causes of action pending or commenced on or after such date"); *see also* NYLL § 198(1-a)(ii) (specifying the appropriate damages "for conduct occurring after the effective date of this paragraph" in contrast with § 198(1-a)(i), which contains no such limiting language).

In Plaintiffs' view, this amendment affirms that § 198 provides a private right of action for violations of § 191(1)(a). Defendants "disagree with Plaintiffs' assertion that the May 2025 amendment changes the narrative with respect to whether a private cause of action exists but agree that it limits the potential damages of such a claim." (Doc. 58 at 1.)

The court agrees with Plaintiffs. First, even disregarding the recent amendment to § 198, almost every district court to address the split between *Vega* and *Grant* has adopted *Vega*'s reasoning. *See, e.g., Covington v. Childtime Childcare, Inc.*, No. 23-cv-710, 2024 WL 2923702 (N.D.N.Y. Jun. 10, 2024) (collecting cases) ("District courts sitting in this Circuit have had the opportunity to weigh-in on *Grant* and address the split in authority—all but one have continued to follow *Vega* as the predominate authority and predict that the Court of Appeals is more likely to adopt the First Department's conclusion."); *Turenne v. Wireless Vision Holdings, LLC*, No. 23-CV-3651, 2025 WL 2733227, at *4 (E.D.N.Y. Sept. 25, 2025) (considering the split between *Vega* and *Grant* and concluding that § 198 provides a private right of action for violations of § 191(1)(a)); *Bazinett v. Pregis*, 720 F. Supp. 3d 154, 165 (N.D.N.Y. 2024) (same); *Johnson v. Best Bev LLC*, No. 24-CV-1260, 2025 WL 2734204, at *7–8 (N.D.N.Y Sept. 25, 2025) (same);

15

*Gordon v. Riverdale SNF, LLC*, No. 24 Civ. 2612, 2025 WL 2390727, at *12 (S.D.N.Y. Aug. 18, 2025) (slip opinion) (same).

Turning to the § 198 amendment, the new language explicitly provides a private right of action for violations of § 191(1)(a). The specific reference to § 191(1)(a) clarifies that it is within the scope of claims that can be brought in an "action instituted in the courts upon a wage claim by an employee or the commissioner" under § 198(1-a). Furthermore, the New York State Assembly would have no reason to outline the damages an employee may recover for a violation of § 191(1)(a) if workers have no private right of action for such violations. *See Euson v. TRC Eng'rs, LLC*, No. 24-CV-1168, 2025 WL 2591847, at *9 (N.D.N.Y. Sept. 8, 2025) ("Indeed, there would seem to be little reason to specify the circumstances under which liquidated damages could be allowed for a pay frequency claim if no private right of action to pursue such a claim exists in the first place."). Other courts agree that the amendments to § 198 confirm that there is a private right of action for violations of § 191(1)(a). *See id.*; *see also, Garzon v. Bldg. Servs. Inc.*, No. 24-CV-5429, 2025 WL 1871171, at *10 (S.D.N.Y. Jul. 2, 2025) (stating that the amendments to § 198 "reinforce" the conclusion that the statute creates a private right of action), *report and recommendation adopted*, 2025 WL 2062741 (S.D.N.Y. Jul. 23, 2025); *Garcia v. New Force Constr. Corp.*, No. 23-CV-2336, 2025 WL 2015158, at *15 (E.D.N.Y. Jul. 18, 2025) (report and recommendation) ("As amended, NYLL § 198(a-1) now explicitly states that it provides a private cause of action for violations of Section 191(a) . . . ."); *Gordon*, 2025 WL 2390727, at *12 (same); *Lopez v. J&L Sky Contractors Corp.*, No. 24-CV-7661, 2025 WL 1859690, at *17 (E.D.N.Y. Jul. 7, 2025) (report and recommendation) (same).

In the alternative, Defendants argue that the court should not exercise supplemental jurisdiction over this claim. Although, at present, the court has dismissed both of the federal law

16

claims, it also granted leave to Plaintiffs to replead the ERISA claim. Because that federal cause of action may remain a part of the case, it is appropriate for the court to continue exercising supplemental jurisdiction at this time. *See Gabriel v. Albany Coll. of Pharmacy & Health Scis. – Vt. Campus*, No. 12-cv-14, 2012 WL 4718678, at *6 n.4 (D. Vt. Oct. 3, 2012) ("Because the Court is granting Gabriel leave to amend his discrimination claim, the Court retains supplemental jurisdiction over the state law contract claims."). The court therefore declines to adopt the R&R's analysis and recommendations regarding Plaintiffs' NYLL claim. The Motion to Dismiss is DENIED with respect to Count II.

## II.   Motion for Conditional Certification of FLSA Collective Action (Doc. 8)

As noted in the R&R, Plaintiffs' Motion for Conditional Certification of FLSA Collective Action (Doc. 8) is moot because the court has dismissed the FLSA claim. The motion is therefore DENIED.

## Conclusion

The court ADOPTS the R&R's recommendation that the court grant the Motion to Dismiss with respect to the FLSA claim (Count I). The court ADOPTS, AFFIRMS, and APPROVES in full the portion of the Report and Recommendation (Doc. 50) concerning Plaintiffs' ERISA claim (Count III). The court also ADOPTS, AFFIRMS, and APPROVES the R&R's analysis and conclusion regarding Plaintiffs' Motion for Conditional Certification of FLSA Collective Action. The court otherwise declines to adopt the R&R.

The Motion to Dismiss (Doc. 25) is GRANTED IN PART and DENIED IN PART. Count I of the Complaint is DISMISSED WITH PREJUDICE. Count III is DISMISSED WITHOUT PREJUDICE, with leave to file an amended complaint as to that claim. The motion is otherwise DENIED.

17

Plaintiffs' Motion for Conditional Certification of FLSA Collective Action (Doc. 8) is DENIED.

Dated this 28th day of January, 2026.

Geoffrey W. Crawford, Judge
United States District Court